IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:20-CR-43-NR |
| | ) | |
| TYRONE TERRY and TERRELLE | ) | |
| SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

A grand jury indicted Defendants Tyrone Terry and Terrelle Smith for unlawful possession of firearms in violation of 18 U.S.C. § 922(g)(1). Pending before the Court is Defendants' motion to suppress physical evidence that police officers seized on October 8, 2019. ECF 87; ECF 74. That evening, police officers attempted a traffic stop of Defendants. Defendants instead crashed their vehicle, fled on foot, and threw their firearms. After a chase, officers eventually arrested Mr. Terry a few blocks away. Defendants now argue that the police officers lacked reasonable suspicion to effectuate the initial traffic stop, and therefore the firearms must be suppressed. Additionally, Mr. Terry argues that the officers lacked probable cause to arrest him later. Defendants thus assert that all evidence seized during this incident (two firearms and a bullet) must be suppressed.

After carefully considering the parties' briefs, the law, and the evidence adduced at the suppression hearing, the Court will deny the motion. In short, there was no initial "seizure," for constitutional purposes, when the officers attempted the traffic stop, because Defendants crashed their vehicle and fled. For the Fourth Amendment to attach, officers had to have applied force, or Defendants had to have submitted to the officers' show of authority. Neither happened. Because the Fourth Amendment was not triggered, the tossed firearms are considered abandoned

1

property and not "fruits" of any seizure to be suppressed.   Further, Mr. Terry's subsequent arrest was supported by probable cause, and therefore the bullet later found in his pocket will not be suppressed on the basis of an unlawful arrest. For these reasons, discussed in full below, the Court will deny the motion.

## BACKGROUND

The Court makes the following factual findings based on the testimony and evidence introduced at the suppression hearing.

On the evening of October 8, 2019, members of the Pittsburgh Bureau of Police Narcotics Unit were conducting a suppression detail in the area of Watson Street in the Uptown neighborhood of Pittsburgh, an area reported as experiencing numerous open-air narcotics sales.  ECF 119, pp. 11-12.  Video surveillance revealed Mr. Smith and Mr. Terry getting into a white Dodge pickup truck driven by Mr. Smith.  *Id.* at pp. 13-14.  Several unmarked police cars began to follow them.  *Id.* at p. 14.   While leading the surveillance tail, Detective Francis Niemiec observed the truck speeding, making abrupt lane changes without signaling, and cutting off other vehicles.  *Id.* at pp. 58-59.  Because his vehicle was not equipped with lights or sirens, *id.* at p. 56, Detective Niemiec radioed to his colleagues, narrating each traffic violation he saw. *Id.* at pp. 14-15.  But he lost sight of the truck when it abruptly took an exit.  *Id.* at p. 59.  Detective Mike Lafferty caught up with the truck and activated his lights and sirens, attempting to effectuate a traffic stop.  *Id.* at p. 16.

Defendants' truck paused for a split second before pulling into a parking lot. *Id.* at p. 17.  It continued moving until it crashed into a fence.  *Id.* at p. 18.  Defendants then leapt out of the truck while it was still in gear.  *Id*.  By the time Detective Lafferty opened his driver's side door, Mr. Smith was already fleeing on foot.  *Id.* at p. 39.  As he ran, he made a throwing motion toward the adjacent backyards.  *Id.* at p. 18.  Detective Pete Glavach subsequently recovered a firearm in a yard directly ahead of the fence where the truck had crashed.  ECF 89, p. 3; ECF 119, p. 40.

Mr. Terry had fallen onto his palms as he exited the truck, but he soon ran in the same direction.  ECF 119, p. 19.  As Detective Lafferty and Detective Danielle Ossman pursued the Defendants on foot, the two men ignored all commands to stop. *Id.* at p. 20.[1]  Neither officer made any physical contact with either man.  *Id.*  During the chase, Detective Lafferty saw Mr. Terry pull a gun from his waist area and throw it into a backyard.  *Id.* at pp. 19-20.  As Detective Lafferty continued on foot, Detective Ossman stayed behind and recovered a pistol from a nearby backyard.  *Id.* at pp. 41-42.  Within 30 seconds, Detective Lafferty lost sight of both Mr. Terry and Mr. Smith. *See id.* at p. 41.

Detective Lafferty then radioed for backup, though he was only able to give a generic description at first: "black males, dark clothing, took off from a white truck, threw a gun."  *Id.* at p. 22; Gov't Exhibit 3.  It was dark outside, and the Detective did not recognize Mr. Terry.  *Id.* at p. 42.  After reviewing a surveillance photograph, he issued another radio call: "Driver ran towards Liberty running inbound.  Passenger ran down the alley right on 36th toward Denny.  Male that threw the firearm was wearing a dark blue hoodie or jacket with a stripe across the front, black gray jeans with ripped holes in the front."  *Id.* at pp. 24-25; Gov't Exhibit 7.  However, he still did not recognize the man in the photograph as Mr. Terry.  ECF 121, p. 4; *see* ECF 119, p. 43.

Blocks away, Officer Igor Boyko, who was uniformed, heard the dispatch and noted that the description matched a man he had just seen.  ECF 119, pp. 24, 73.  When he saw Mr. Terry again, he detained him and conducted a pat-down for weapons.  *Id.* at pp. 73-74, 80.  Nothing was found.  *Id.* at pp. 80-81.  Detective Lafferty responded to Officer Boyko's location and recognized Mr. Terry as the man he had

---

[1] There is some dispute about what exactly the officers yelled as they chased Defendants.  They identified themselves as Pittsburgh police officers, ECF 119, p. 20, and they may also have declared that the suspects were "under arrest."  ECF 88, p. 3; ECF 89, p. 15 n.9.  In any case, their orders were ignored.

been chasing. *Id.* at p. 27. He did not conduct a background check at the scene but claimed familiarity with Mr. Terry – and his lack of a gun license – from previous policework. *Id.* at pp. 26-27, 45-46.

The officers arrested Mr. Terry and transported him to the Allegheny County Jail. ECF 121, p. 4; ECF 119, pp. 75-76. There, an intake search yielded a bullet in Mr. Terry's pants pocket. ECF 89, p. 3. Mr. Smith was not arrested until two months later. ECF 119, p. 7.

## DISCUSSION & ANALYSIS

### I. The traffic stop did not constitute a seizure, so the firearms are not "fruits" of an unlawful seizure.

Mr. Terry argues that the officers lacked reasonable suspicion to justify the attempted traffic stop that ultimately led to police obtaining the firearms at issue. ECF 121, p. 4. The government counters that no seizure took place until Officer Boyko apprehended Mr. Terry. ECF 123, p. 4. The Court agrees with the government.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. But attempted, unsuccessful seizures are beyond its scope. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998). The issue here, then, is whether and when the officers seized Mr. Terry. *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008).

A traffic stop ordinarily constitutes a seizure of a vehicle's driver and passengers. *Brendlin v. California*, 551 U.S. 249, 255-58 (2007). Had the truck pulled over and stopped when Detective Lafferty turned on his lights and sirens, Defendants would have been seized. *See United States v. Brown*, 765 F.3d 278, 289 (3d Cir. 2014). But a traditional traffic stop did not occur here. Instead, after pausing for a "split second," the truck kept moving, crashed into a fence, and its occupants immediately fled the scene on foot. Therefore, a traditional traffic stop analysis does not apply.

Instead, as relevant here, the Supreme Court has explained that a seizure occurs in two situations: (1) when there is "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (2) when a person submits to a "show of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Neither occurred here.

First, the officers never laid hands on Defendants.  The two men initially outran the pursuing police, so the officers giving chase were not able to exercise even "the slightest application of physical force." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (cleaned up); *see also Brendlin*, 551 U.S. at 262 ("[A] fleeing man is not seized until he is physically overpowered[.]").

Second, the officers showed their authority (*e.g.*, they activated their lights and sirens)—but Defendants never submitted to it.  Submission "requires, at minimum, that a suspect manifest compliance with police orders." *United States v. Waterman*, 569 F.3d 144, 146 n.3 (3d Cir. 2009) (citations omitted); *United States v. Hester*, 910 F.3d 78, 87 (3d Cir. 2018) (passenger submitted when he waited in the vehicle prior to and during traffic stop questioning before ultimately attempting to escape); *Coggins*, 986 F.2d at 654 (defendant submitted by complying with a DEA agent's instructions to sit back down and complete an interview, though he subsequently ran off).  Notably, momentary compliance does not constitute a seizure. *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) (defendant was not seized when he only gave his name to police before trying to flee); *United States v. Smith*, 575 F.3d 308, 316 (3d Cir. 2009) (defendant failed to submit when he took two steps toward squad car but then turned and ran).  Additionally, in a vehicular context, defendants who stop their car for only brief periods are not seized. *E.g.*, *United States v. White*, 336 F. App'x 185, 188 (3d Cir. 2009) (no seizure where defendant, riding on a bicycle, paused for "a few moments" upon hearing the order to stop, then tossed a gun and pedaled away); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994) (no

5

seizure where defendant stopped his car at the curb in response to police commands, but sped away when an officer approached on foot).

Applying these principles here, the Court finds that no submission occurred. Detective Lafferty credibly testified that the truck paused for only "a split second" before continuing into a parking lot, ECF 119, pp. 17, 38, and Mr. Terry does not allege differently.   The vehicle itself eventually came to a stop when it crashed into a fence.   But the officers' show of authority did not produce that stop; the laws of physics did.   *See Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (seizure occurs "only…*through means intentionally applied*," so decedent crashing into a police-placed roadblock was a seizure) (emphasis in original).   Indeed, Defendants' truck was still in gear, further indicating a lack of submission.   Thus, Defendants had not submitted to the police, and a seizure had not occurred, when the truck came to a stop.

Moreover, as in *Hodari D.*, Defendants tossed the contraband at issue as they fled on foot, showing an absence submission.   *See* 499 U.S. at 623.   As the Supreme Court explained, "a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee…is no seizure."   *Id.* at 626; *see also United States v. Lowe*, 791 F.3d 424, 433 (3d Cir. 2015) ("[F]ailure to submit has been found where a suspect takes action that clearly indicates that he does not yield to the officers' show of authority…. The most obvious example is when a suspect runs from the police." (cleaned up)).   Mr. Terry was therefore not seized until Officer Boyko later detained him, and Mr. Smith was not seized until he was arrested months after the incident.

As a result, because the traffic stop here was not a seizure, the firearms that Defendants tossed cannot be considered the fruits of any unlawful police action.   That is, when "property is voluntarily abandoned before a seizure and retrieved by the police, it has been lawfully recovered and there can be no claim that it was the subject of an unconstitutional seizure."   *United States v. Johnson*, 432 F. App'x 118, 120 (3d

6

Cir. 2011) (citation omitted); *see also id.* at 121 (no seizure when – after a car chase – defendant jumped from the vehicle, ran, and threw his handgun to the side); *United States v. Acosta*, 751 F. App'x 201, 202-03 (3d Cir. 2018) (before being seized, defendant abandoned a gun by throwing it away while running); *United States v. Owens*, No. 03-2637, 2004 WL 1247085, at *1 (3d. Cir. June 8, 2004) (same).

In short, the guns were freely abandoned and lawfully recovered. The Court will not exclude them.

## II.  Mr. Terry was lawfully detained, so the bullet will not be excluded.

After Mr. Terry initially evaded police, Officer Igor Boyko apprehended him just blocks away.  ECF 89, p. 3.  Mr. Terry argues that this was an unlawful seizure. First, he argues that Officer Boyko lacked reasonable suspicion to briefly detain him. ECF 121, p. 9.  Second, he argues that the officers did not have probable cause to then arrest him.  *Id.* at p. 11. Consequently, Mr. Terry argues that the Court should exclude the bullet that was later found in Mr. Terry's pocket after his arrest.[2]  The Court, however, finds that Officer Boyko's initial detention and subsequent arrest of Mr. Terry were lawful.

First, Officer Boyko's initial detention was lawful because he had "reasonable, articulable suspicion that criminal activity [was] afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  This standard is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."  *Id.* In assessing reasonable suspicion, a court must examine the totality of the circumstances, *United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir. 2008), through

---

[2] The firearms cannot be considered a "fruit" of this search because, as discussed above, Defendants had already abandoned them by this time. Thus, the only arguable "fruit" would be the bullet, which was found by jail officials after Mr. Terry was transported to the jail.

the lens of officer training and experience, *see United States v. Cortez*, 449 U.S. 411, 418 (1981).[3]

Considering the totality of the circumstances here, the police officers collectively knew that the individual at large had visited a high-crime location, fled from police, and threw a gun into a backyard.[4]   Based on common-sense judgments and inferences about human behavior, *Wardlow*, 528 U.S. at 125, the Court finds that these facts taken together provide reasonable suspicion of illegal activity.   Mr. Terry's clothing matched the detailed description Detective Lafferty had given, and Officer Boyko was located only blocks from where the truck had crashed.   *See* ECF 119, pp. 71-74. So, Officer Boyko was justified in believing that Mr. Terry was the individual described and detaining him accordingly.

---

[3] Mr. Terry challenges some of these bases for reasonable suspicion – arguing, for example, that flight alone is not sufficient, and that firearm possession with a license is legal.  But the Third Circuit has warned against a "divide and conquer" approach to examining reasonable suspicion, where each suspicious fact is analyzed in isolation.  *E.g., United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) ("In this case, the District Court erroneously applied the divide-and-conquer approach rejected by the Supreme Court in *Arvizu* by examining each of the allegations in the affidavit *seriatim* rather than collectively.").   The totality of these circumstances is what matters.

[4] Officer Boyko himself had not participated in the initial surveillance of the truck or pursuit of Mr. Terry.  *See* ECF 119, p. 24.  Instead, he heard Detective Lafferty call for help over the radio.  *Id.*  Though Officer Boyko had not personally witnessed the earlier events, he was permitted to rely on communications from other officers when detaining a suspect, as long as the dispatching officer possessed the requisite level of suspicion. *See United States v. Hensley*, 469 U.S. 221, 231-32 (1985); *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997).  Moreover, the Third Circuit has adopted the collective knowledge doctrine, which imputes the knowledge of other officers to the one conducting the seizure, even if that officer did not personally know the basis for reasonable suspicion.  *United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979); *United States v. Whitfield*, 634 F.3d 741, 745-46 (3d Cir. 2010).  The Court must therefore judge the reasonableness of Officer Boyko's seizure according to what the officer team collectively knew when it took Mr. Terry into custody.

Moreover, the officers had probable cause to escalate Mr. Terry's detention into an arrest.  Probable cause does not require certainty, but instead requires "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (cleaned up). Again, the totality of the circumstances is what matters.  *Id.*

Here, the same circumstances described above are sufficient for probable cause.  *E.g., Johnson*, 432 F. App'x at 121 (probable cause existed based on suspected drug activity, car chase, and throwing a gun while fleeing on foot); *Acosta*, 751 F. App'x at 203 (probable cause based on an anonymous tip, flight from police, and discarding a gun).  Additionally, Detective Lafferty testified that once he arrived on the scene, he recognized Mr. Terry and recalled from previous policework that he did not have a firearm license.  ECF 119, pp. 26-27.  Though his familiarity is not necessary to establish probable cause, the Court finds Detective Lafferty's testimony credible, and that it further strengthens any finding of probable cause.

Because Mr. Terry's arrest was lawful, the bullet discovered during the administrative search at the Allegheny County Jail is not fruit of the poisonous tree, and the Court will not exclude it.

For these reasons, the Court denies the motion to suppress evidence stemming from any arrest of Mr. Terry.

## CONCLUSION

For the foregoing reasons, Defendants' motion to suppress physical evidence is **DENIED**.  An appropriate order follows.

DATE:  October 4, 2021                                    BY THE COURT:

                                                          /s/ *J. Nicholas Ranjan*
                                                          United States District Judge