IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:20-CR-43 |
| | ) | |
| TYRONE TERRY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:22-CR-178 |
| | ) | |
| RASHAWN WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Pending before the Court are two separate cases in which the government indicted each Defendant on a lone charge of being a felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. § 922(g)(1). In both cases, Defendants pled guilty, but as they awaited sentencing, the *en banc* Third Circuit issued its decision in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (*en banc*). In *Range*, the Third Circuit found that § 922(g)(1) was unconstitutional as applied to Mr. Range. Defendants argue that *Range* applies to them too, so their pleas should be withdrawn and their indictments dismissed.

After careful review, the Court disagrees. Unlike *Range*, Defendants here have a significant threshold obstacle that prevents them from even invoking their Second Amendment rights to begin with: standing. Tyrone Terry was on state probation at the time of the offense conduct and indictment, and Rashawn Walker was on state

- 1 -

parole at the time of his offense conduct and indictment.  Importantly, both of their state sentences prohibited them from possessing firearms or ammunition while on supervision.  Because Defendants' Second Amendment rights were suspended at the time of the offense conduct and their indictments, they have no standing to now challenge their prosecutions as violating those rights.  Put differently, the indictments here haven't deprived Defendants of their Second Amendment rights; their prior state sentences did.  As such, the Court will deny the motions to dismiss.

## BACKGROUND[1]

### I.    Tyrone Terry.

In December 2018, Mr. Terry pled guilty to two state crimes.  ECF 255, p. 2.[2] The state court sentenced Mr. Terry to concurrent probation terms of three and two years for these offenses.  *Id.*  One of the conditions of Mr. Terry's probation was that he could not possess a firearm or ammunition.  ECF 260-1, ¶ 3 ("You may not possess any firearm, ammunition, or prohibited offensive weapon as defined in 18 Pa. C.S.A. § 908 while you are under court supervision.  This includes on your person, in your residence, or in your vehicle."); ECF 260-2, ¶ 3 (same).

While on state probation, a federal grand jury indicted him here for being a felon in possession in violation of 18 U.S.C. § 922(g)(1).  As stated in the indictment,

---

[1] The parties dispute what information the Court can review as part of the as-applied challenges.  The Court has relied upon the indictments, Mr. Terry's prior criminal sentence and probation conditions (ECF 260), and the U.S. Probation Office's information about Mr. Walker's parole dates (ECF 69).  These are essentially matters of public record, for which the Court can take judicial notice, and they otherwise do not appear to be disputed.

[2] All record citations related to Mr. Terry are from the docket at Case No. 20-cr-43, and those related to Mr. Walker are from the docket at Case No. 22-cr-178.

the offense conduct occurred on October 8, 2019, and the grand jury returned the indictment on February 11, 2020.  ECF 1.

## II.   Rashawn Walker.

Mr. Walker was serving a state sentence, when, on March 28, 2023, he was released on parole.  Under Pennsylvania law, one of the general conditions of parole is that the parolee may not possess a firearm.  37 Pa. Code § 63.4(5)(ii) ("[I]f parole is granted, the parolee shall . . . [r]efrain from owning or possessing firearms or other weapons.").  Mr. Walker's parole conditions continued until his parole expired on September 29, 2022.  ECF 69.

While he was on parole, a grand jury indicted Mr. Walker here for being a felon in possession in violation of 18 U.S.C. § 922(g)(1).  As stated in the indictment, the offense conduct occurred on December 28, 2021, and the grand jury returned the indictment on July 12, 2022.  ECF 1.

## **<u>DISCUSSION & ANALYSIS</u>**

## I.   **Neither Mr. Terry nor Mr. Walker has standing to challenge the constitutionality of § 922(g)(1).**

To raise a Second Amendment challenge to their indictments, Defendants must satisfy the threshold requirement of Article III standing.[3]  To establish Article

---

[3] Article III standing requirements apply to cases (criminal and civil) where a person is challenging governmental conduct as violating his constitutional rights.  *See, e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (requiring Article III standing for First Amendment challenge); *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (considering whether a criminal defendant had Article III standing to raise the equal protection rights of a juror who was struck allegedly on the basis of race); *Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, ---F.4th---, No. 22-2030, 2023 WL 5539276, at *5 (3d Cir. Aug. 29, 2023) (analyzing standing for First Amendment claims); *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, ---F.4th---, No. 23-1214, 2023 WL 5286171, at *2 (3d Cir. Aug. 17, 2023) (analyzing standing for pre-enforcement challenge under Second Amendment); *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (analyzing standing for a constitutional challenge to Pennsylvania's election code); *see also Rakas v. Illinois*,

III standing, an individual must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (cleaned up).

An "injury in fact" is an invasion of a legally protected interest that is "concrete and particularized . . . and actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "The second element, causation, demands a causal connection between the injury and the conduct complained of that is attributable to the defendant, and not the result of the independent action of some third party not before the court." *Siegel v. U.S. Dept. of Treas.*, 304 F. Supp. 3d 45, 50 (D.D.C. 2018) (cleaned up). The third element requires that it is likely "that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (cleaned up).

Though Defendants have asserted a concrete and particularized injury in fact—a violation of their Second Amendment rights[4]—they cannot establish the second two elements: causation and redressability.

Turning first to causation, Mr. Terry and Mr. Walker cannot show that their injury—*i.e.*, the deprivation of their Second Amendment rights—was caused by application of § 922(g)(1). That's because Mr. Terry's conditions of probation and Mr. Walker's conditions of parole already prohibited them from possessing firearms when they committed the offense conduct. In other words, any limitation on Mr. Terry's and Mr. Walker's Second Amendment rights was not proximately caused by §

---

439 U.S. 128, 139 (1978) (requiring standing to raise a Fourth Amendment challenge, but subsuming it into merits analysis).

[4] *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (finding that "traditional harms may also include harms specified by the Constitution itself").

922(g)(1), but by the actions of independent third parties—the Pennsylvania state court and parole board that instituted their probation and parole conditions.

If a party's constitutional rights are already limited by the acts of a third party not before the court, the party cannot make the required showing of causation. *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." (cleaned up)); *Dept. of Educ. v. Brown*, 143 S. Ct. 2343, 2354 (2023) (finding no standing when the plaintiffs' injuries were not "fairly traceable" to the defendant); *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (stating that the second prong "focuses on who" caused the plaintiff's injury (cleaned up)); *Tugboat Invs. LLC v. Bank of Am.*, N.A., No. 22-2149, 2023 WL 2390661, at *3 (E.D. Pa. Mar. 6, 2023) (no standing where plaintiff alleged damages from fraudulent sales but brought suit against the bank used by fraudsters, but not the fraudsters themselves); *Stinnie v. Holcomb*, No. 16-44, 2017 WL 963234, at *15 (W.D. Va. Mar. 13, 2017) (no standing to bring due process challenge against state Commissioner for law suspending driver's licenses because "assuming that the suspensions were unconstitutional, they were unconstitutional due to something the state courts (which are not parties here) did or failed to do," rather than the Commissioner).

For the same reasons, Defendants also have a redressability problem. Their injuries cannot be cured by a favorable decision from this Court. With their as-applied challenges, Defendants contend that at the time that they possessed firearms, the government was not allowed to indict them for that protected Second Amendment conduct. Defendants essentially seek a declaration from this Court that they had Second Amendment rights back then, and dismissal of the indictments by this Court will restore those rights as of when the offense conduct occurred. But even if the Court granted the motions, that wouldn't restore Defendants' rights, since their state probation and parole sentences suspended those Second Amendment rights at the

time of the offense conduct. *Stinnie*, 2017 WL 963234, at *17 (collecting cases for the proposition that if a favorable decision would not provide effective relief, redressability does not exist).

For this Court to redress Defendants' injuries and restore their Second Amendment rights to them, Defendants would likely have to first seek a declaration that their state sentences deprived them of their Second Amendment rights. Procedurally, that would be hard to do.[5] Substantively, even harder. *See Kanter v. Barr*, 919 F.3d 437, 461 (7th Cir. 2019) (Barrett, J., dissenting) (recognizing that "the rights of felons" can be "suspended during the term of the sentence" (cleaned up)); *Shaw*, 2023 WL 3619416, at *7 ("[A]ny Second Amendment right applicable here may be limited during the period of probation, just as other myriad constitutional rights are.").

Because Mr. Terry and Mr. Walker's injuries were not caused by § 922(g)(1) and cannot be redressed by a favorable decision, they lack standing to bring their as-applied challenges.

## II. Even if Defendants had standing, their challenges would fail under the two-step test set forth in *Bruen* and *Range*.

Even if Mr. Terry and Mr. Walker had standing, their motions would fail because probationers and parolees like Mr. Terry and Mr. Walker are not engaged in protected Second Amendment conduct.

As the Supreme Court recently explained, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Thus, to justify a statute regulating that conduct, the government must

---

[5] For example, a defendant would likely have to raise his Second Amendment challenge to a state-court probation sentence to the state appellate courts. For this Court to address the constitutionality of the state sentence, it would likely have to be on habeas, after exhaustion of state-court remedies.

show "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Only if the government makes this showing can a court conclude that an individual's conduct falls outside the protection of the Second Amendment. *Id.*

That means the Court must engage in a two-step analysis to determine: (1) "whether the text of the Second Amendment applies to a person and his proposed conduct"; and (2) if it does, whether the government met its burden of affirmatively proving that the firearms regulation is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Range*, 69 F.4th at 101 (cleaned up).

Defendants' challenges fail at the first step. Assuming Defendants are part of the "the people" protected under the Second Amendment,[6] they must still, as part of the first step, establish "whether § 922(g)(1) regulates Second Amendment conduct." *Id.* at 103. That was considered an "easy question" in *Range*, because "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Id.* But it's not easy here for Defendants. Application of § 922(g)(1) as applied to Mr. Terry and Mr. Walker does not regulate protected Second Amendment conduct for the same reasons that they don't have standing. That is, even if Defendants were to claim that they were possessing the guns to engage in self-defense or to hunt, they were prohibited by their state sentences from doing so. This is no different than a prisoner in jail possessing

---

[6] That is a generous assumption. The Supreme Court in *Bruen* didn't address this. *Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). In *Range*, the Third Circuit rejected the idea that *only* "law-abiding, responsible citizens" are part of the "people." *Range*, 69 F.4th at 103. But the Third Circuit also didn't otherwise define the contours of "the people," including whether probationers and parolees are included.

a gun for self-defense. Prisoners' Second Amendment rights are suspended while incarcerated—so too were Defendants'.[7] It follows, then, that application of § 922(g) necessarily couldn't regulate any protected Second Amendment activity by Defendants at the time they possessed the firearms at issue.

## III.   The Court rejects Defendants' remaining challenges.

Both Defendants also bring facial challenges to § 922(g)(1). Both fail. "A party asserting a facial challenge must establish that no set of circumstances exists under which the Act would be valid." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (cleaned up). To meet this burden, the party must show that the statute is unconstitutional in all its applications. *Id.* Neither Mr. Terry nor Mr. Walker can meet this heavy burden.

Nothing in *Range* suggests that the Third Circuit meant to declare § 922(g)(1) unconstitutional in all circumstances. Quite the opposite. *See Range*, 69 F.4th at 106 ("Our decision today is a narrow one."). And the Court in *Range* even arguably hinted at cases where a § 922(g) prosecution likely would pass constitutional muster. *Id.* at 104 n.9.

---

[7] This is consistent with the well-established body of caselaw holding that probationers and parolees have diminished constitutional rights generally. "Parole is a 'variation on imprisonment of convicted criminals[.]'" *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) (quoting *Morrissey*, 408 U.S. at 477). Similarly, probation is a form of criminal sanction similar to imprisonment and is a "common sentence for those convicted of serious crimes[.]" *Collura v. Ford*, No. 13-4066, 2016 WL 409228, at *20 (E.D. Pa. Feb. 3, 2016) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)). Parolees are only entitled to "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480. Similarly, "[a] whole range of constitutional liberties that ordinary citizens possess is commonly restricted, even quite severely, for those serving terms of probation." *United States v. Shaw*, No. 22-1, 2023 WL 3619416, at *5 (D.D.C. May 24, 2023); *see also United States v. Knights*, 534 U.S. 112, 591-92 (2001) (discussing limitations on a probationer's Fourth Amendment rights and holding that a search condition that was a condition of probation "significantly diminished [probationer's] reasonable expectation of privacy").

Mr. Walker also makes a Commerce Clause challenge to the constitutionality of § 922(g) to preserve it for appeal.  ECF 58, 9.  That claim fails on the merits, based on existing precedent.  The standard for whether Congress may regulate an activity under the Commerce Clause is whether the regulated activity "substantially affect[s] interstate commerce."  *United States v. Lopez*, 514 U.S. 549, 559 (1995).  The Third Circuit has repeatedly held that § 922(g) meets this standard.  *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001); *United States v. Gateward*, 84 F.3d 670, 672 (3d Cir. 1996) ("Congress drafted § 922(g) to include a jurisdictional element, one which requires a defendant felon to have possessed a firearm 'in or affecting commerce.'").

## CONCLUSION

For these reasons, it is hereby **ORDERED** that Mr. Terry's and Mr. Walker's motions to dismiss will be **DENIED**.  Appropriate orders follow.

Date: September 14, 2023                    BY THE COURT:

                                            */s/ J. Nicholas Ranjan*
                                            United States District Judge